**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

GEORGE'S PLACE, LLC., and
MARGARET K. HOCTER,

       Plaintiffs,

v.                                    Case No.  3:11-cv-1096-J-37JBT

GORDON SMITH, in his official
capacity as Sheriff of Bradford
County, Florida and SEVERAL
UNKNOWN BRADFORD COUNTY
DEPUTY SHERIFFS, individually.

       Defendants.
_____/

**ORDER**

    This cause is before the Court on the following:

1)    Plaintiffs' Motion for Preliminary Injunction and Memorandum of Law ("Motion for Preliminary Injunction" or "Motion") (Doc. No. 2), filed on November 7, 2011;

2)    Sheriff Smith's Response to Motion for Preliminary Injunction ("Response") (Doc. No. 13), filed on December 2, 2011;

3)    Plaintiffs' Reply to Sheriff Smith's Response to Motion for Preliminary Injunction ("Reply") (Doc. No. 15), filed on December 6, 2011;

4)    Plaintiffs' Supplemental Memorandum on Protected Due Process Property Interest ("Supplemental Brief") (Doc. No. 19), filed on December 16, 2011; and

5)    Sheriff Smith's Supplemental Response/Brief and Motion to Dismiss or, Alternatively, Motion for Summary Judgment (Doc. No. 20), filed

on January 3, 2012.[1]

## BACKGROUND

George's Place, LLC ("George's Place") and Margaret K. Hocter ("Ms. Hocter") (collectively, "Plaintiffs") filed a Complaint (Doc. No. 1) in this Court on November 7, 2011 against Defendants Gordon Smith, in his official capacity as Sheriff of Bradford County ("Defendant Smith"), and Several Unknown Bradford County Deputy Sheriffs, individually ("the Unknown Deputies") (collectively, "Defendants").  Plaintiffs bring this action under 42 U.S.C. § 1983, alleging Defendants violated their due process rights (Count I) and equal protection rights (Count II).  (*See* Doc. No. 1.)

George's Place is a licensed liquor establishment located in or near Starke, Florida, which  Ms. Hocter manages and operates. (*Id.* at ¶ 8, 9.)  Defendant Smith is the Sheriff of Bradford County, Florida, and the Unknown Deputies are those deputies who engaged in alleged "customs, practices, and/or policy of the Bradford County Sheriff's Office" in ways that violated Plaintiffs' constitutional rights.  (*Id.* at ¶¶ 6,7.)  Plaintiffs and Defendants offer very different versions of the facts underlying this action, and each party includes evidence (e.g., affidavits) to support their respective versions of the facts.  Accordingly, the Court sets forth Plaintiffs' allegations here, but addresses the numerous inconsistencies in the record, where appropriate, in its analysis in the "Discussion" section, below.

### A.    Plaintiffs' Allegations

According to Plaintiffs' Complaint, before Defendant Smith was elected Sheriff, he

---

[1]    Although Defendants have entitled their filing "Sheriff Smith's Supplemental Response/Brief and Motion to Dismiss or, Alternatively, Motion for Summary Judgment," the Court considers this document only to the extent it responds to Plaintiffs' Supplemental Brief.  Defendants are instructed to adhere to the directives set forth in the Conclusion of this Order.

was the police chief of the City of Starke.  (*Id.* at ¶¶ 12, 16.)  At some point, Ms. Hocter

"discovered that then Police Chief Smith was instructing his City of Starke police officers

to funnel most of their accident towing calls to Defendant Smith's friends at rival towing

company, T&M Towing, which was owned in part by a Bradford County Commissioner and

family member of Defendant Smith."  (*Id.* at ¶ 12.)  Defendant Smith's actions contravened

the "normally required 'rotation' protocol for assigning accident towing in the city at the

time."  (*Id.* at ¶ 13.)  After Ms. Hocter "was able to establish that Defendant Smith was

[deviating from the rotation policy, she] thereby caused him to stop."  (*Id.* at ¶ 14.)  In

response, Defendant Smith "promised that he would get even someday with Ms. Hocter for

having done so." (*Id.* at ¶ 15.)  These incidents occurred sometime before November 2008,

when Defendant Smith was elected.  (*Id.* at ¶ 16.)

    "Starting approximately fall of 2010, Defendant Sheriff Smith and members of the

Bradford County Sheriff's Office began to engage in a campaign of harassment designed

to drive George's Place and Ms. Hocter out of business."  (*Id.* at ¶ 17.)  For the past year,

"there has been a heavy policy presence in the immediate vicinity of George's Place, as

well as monitoring of customers who attend the premises."  (*Id.* at ¶ 27.)  Plaintiffs contend

that "similarly situated licensed liquor establishments in Bradford County, "such as Whiskey

River, Timbuktu, The Slab, and Reddog Saloon," have not be subjected to similar scrutiny

and have "no police presence at all."  (*Id.* at ¶ 28.)

    It is "obvious" to some of George's Place's customers that the "Bradford County

Sheriff's Office is trying to shut [it] down . . ."  (Doc. No. 3, pp. 3-4, Charles Crawford

Affidavit, ¶ 5; *id.* at pp. 5-6, Jason Crews Affidavit, ¶ 12.)  Current and former customers

and employees complain that deputies follow them after they leave the bar for no apparent

reason. (Crews Aff., ¶¶ 9-11; Doc. No. 3, pp. 7-8, Danielle Longoria Affidavit, ¶¶ 9 -11; *id.*

at pp. 11-12, Jessica Segars Affidavit, ¶ 9.) Patrons have stopped going to George's Place

"because of the recent high level of police presence and attention directed at George's

Place." (Longoria Aff., ¶ 12; Doc. No. 3, pp. 9-10, Nicole Mears Affidavit, ¶ 12 ("I have

observed that the business level at George's Place has dwindled significantly with the

recent increase of law enforcement activity around George's Place"); Segars Aff., ¶¶ 10,11

("In the time that I patronized George's Place, I have noticed a significant decrease in the

level of their business."); Crews Aff., ¶ 13 ("It is my understanding that many former

customers of George's Place have quit coming there and are now going to Whiskey River

in Starke which receives no scrutiny from the Bradford County Sheriff's Office.").) In May,

June, and July of 2011, officers conducted "walk throughs" of the George's Place premises,

"disturbing patrons." (Doc. No. 1, ¶ 25; Mears Aff., ¶ 9 ("I have also been present at the

bar on at least two occasions when Bradford County Deputy Sheriffs did a walk through of

the bar."); Longoria Aff., ¶ 8 ("I was present when Bradford County Deputy Sheriffs did a

walk through of the bar on two occasions, one in June of 2011 and the other in July

2011.").)

Based on these allegations, among others more particularly described in their

Complaint, Plaintiffs allege that Defendants have deprived them of their constitutionally

protected rights without due process of the law. Additionally, Plaintiffs allege Defendants

have deprived them of their right to equal protection of the law by treating them differently

than other similarly situated establishments without any rational basis.

### B.    Procedural History

On November 7, 2011, Plaintiffs filed their Complaint (Doc. No. 1), Motion for

Preliminary Injunction (Doc. No. 2), and Affidavits in Support of the Motion (Doc. No. 3) in this Court.  On December 23, 2011, Defendants filed a motion for enlargement of time to respond to Plaintiffs' Motion  (Doc. No. 10), which the Court granted (Doc. No. 11).  Plaintiff filed a Reply (Doc. No. 15) on December 6, 2011.  On December 7, 2011, both parties filed notices of supplemental authority.  (Doc. Nos. 16, 17.)  On December 8, 2011, the Court held a hearing on the matter, at which it requested additional briefing from the parties.  Plaintiffs filed their Supplemental Brief (Doc. No. 19) on December 16, 2011, and Defendants filed their Supplemental Memorandum in Response (Doc. No. 20) on January 3, 2012.

## APPLICABLE STANDARDS

A federal court has inherent authority to issue an injunction to remedy a violation of constitutional rights.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).  "The purpose of the preliminary injunction is to preserve the positions of the parties as best [the Court] can until a trial on the merits may be held."  *Occupy Ft. Meyers v. City of Ft. Meyers*, No. 2:11-cv-608, 2011 WL 5554034, at *3 (M.D. Fla. Nov. 15, 2011) (quoting *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)).  The Court considers four factors to determine whether preliminary injunctive relief is appropriate in a given case. These factors include whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005).

It is well established in this Circuit that a preliminary injunction is an "extraordinary

and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *Zardui-Quintana v. Richard*, 768 F.2d 1213, 1216 (11th Cir. 1985) (citations omitted). In other words, a preliminary injunction should not be granted unless the movant, "by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed.1995) (footnotes omitted)).

## DISCUSSION

### A. Substantial Likelihood of Success on the Merits

To succeed on the merits of a Section 1983 claim, Plaintiffs must establish they were deprived of a federal right by a person acting under color of state law. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights." *Almand v. DeKalb Cnty., Ga.,* 103 F.3d 1510, 1512 (11th Cir.1997). It is undisputed that Defendants were acting "under color of state law." Thus, the Court must determine whether there is a substantial likelihood that Defendants' actions deprived Plaintiffs of a federal constitutional right.

Additionally, it is well-settled in this Circuit that the standard the Supreme Court established in *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694 (1978), applies to claims against a sheriff in his official capacity. *Scott v. Campbell*, No. 4:08cv205-RH/WCS, 2009 WL 3028306, at *2 (N.D. Fla. Sept. 17, 2009) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115-16 (11th Cir. 2005)). In *Monell*, the Supreme Court held that a municipality may be liable under 42 U.S.C. § 1983

for an employee's constitutional violation (i.e., for a violation committed by the sheriff or deputies in their respective official capacities) "only if (1) the violation was based on a policy or custom or (2) the employee is one whose edicts or acts may fairly be said to represent official policy." *Id.*

The Court addresses the "substantial likelihood of success on the merits" prong of the preliminary injunction analysis in three parts.  First, it assess the viability of Plaintiffs' due process claims.  Second, it considers their equal protection claims.  Third, it determines whether Plaintiffs have met their burden with regard to the *Monell* requirements.

### 1.    Count I: Violation of "Due Process"

In their Complaint, Plaintiffs allege a violation of "due process" rights guaranteed to them by the Fourteenth Amendment of the Constitution.  (Doc. No. 1, ¶¶ 32-35.)  They maintain that Defendants deprived them of their liberty and property interests without "due process of the law." (*Id.* at ¶ 34.)  Although constitutional jurisprudence has long interpreted the Constitution to afford citizens two types of "due process," substantive due process and procedural due process, Plaintiffs assert only a violation of **procedural** due process.  *See Gadzinski v. City of Ft. Walton Beach,* No. 3:10cv425, 2011 WL 2690403, at *3 (N.D. Fla. July 8, 2011) ("While substantive due process protects fundamental rights . . . procedural due process is meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." (internal quotation marks and citation omitted)).   In evaluating whether a plaintiff's procedural due process rights have been violated, a court must first decide whether the moving party has been deprived of a constitutionally protected liberty or property interest.  Next, it must determine whether "the available state procedures were adequate to protect the alleged procedural deficiencies."

7

*Cotton v. Jackson,* 216 F.3d 1328, 1331 (11th Cir. 2000).

### a.    Constitutionally Protected Liberty or Property Interest

Plaintiffs initially alleged Defendants deprived them of "a protected property interest in the profits of their business and a protected liberty interest in operating their business." (Doc. No. 1, ¶ 32.) However, at the December 8, 2011 hearing, the Court directed Plaintiffs to file a supplemental brief discussing this issue, in light of persuasive authority in this Circuit finding that "no constitutional right is implicated by a complaint that asserts a property interest in maintaining a business or earning a profit." *Baltimore Air Transport, Inc. v. Jackson*, 419 F. App'x 932, 937 (11th Cir. 2011)[2] (footnote omitted) (*citing College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (explaining "[t]he assets of a business (including its good will) unquestionably are property, . . . [b]ut business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense," and declining to find a due process violation)).[3]

---

[2]    Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on such opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P. and the Eleventh Circuit Rules.  11th Cir. R. 36-2.

[3]    In addition to *Baltimore Air Transport,* in *Leib v. Hillsborough Cnty. Pub. Transp. Com'n*, 558 F.3d 1301, 1306 n.4 (11th Cir. 2009), the Eleventh Circuit noted, "while [the] complaint alleges a violation of [plaintiff's] right to earn a living, he has abandoned that claim on appeal. The claim would have failed in any event given our holding that employment rights do 'not enjoy substantive due process protection' because such "rights are state-created . . ., not 'fundamental' rights created by the Constitution." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir.1994)).  Further, in *Artistic Entertainment*, the Eleventh Circuit explained that deprivation of a license, such as Plaintiffs' liquor license, is "a property interest created by state law," and thus is not susceptible to a violation of "substantive due process." *Artistic Entm't v. City of Warner Robins*, 134 F. App'x 306,308-09 (11th Cir. 2005) (internal quotation marks and citations omitted) ("Rights created only by state law . . . are not subject to substantive due process protection . . . because

In their Supplemental Brief, Plaintiffs concede that this Circuit likely does not recognize a protected property interest in "earning a profit," but assert that "Defendants' actions in the instant case have deprived [them] of their protected property interest in their state issued liquor license." (Doc. No. 19, p. 1.) They also reassert their contention that they "enjoy a protected liberty interest in pursuing their occupation," citing *Phillips v. Vandygriff,* in which the court explained, "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." (Doc. No. 19, p. 1 (citing *Phillips v. Vandygriff,* 711 F.2d 1217, 1222 (5th Cir. 1983) (alterations in original)).)

Whether Plaintiffs possess a federally protected property right in their liquor licenses is "questionable." *VFW John O'Connor Post # 4833 v. Santa Rosa Cnty., Fla.*, 506 F. Supp. 2d 1079, 1094 n.20 (N.D. Fla. 2007) (citing *Walling Enter., Inc. v. Mathias*, 636 So. 2d 1294, 1296-97 (Fla. 1994) (stating that an alcoholic beverage license amounts to no more than the grant of a privilege; the license it is not property in the constitutional sense); *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1265 (11th Cir. 2003) (per curiam) (stating that a plaintiff must show it has a federally protectable property right in order to establish a procedural due process claim because no such claim "exists until a sufficiently certain property right under state law is first shown.")). Even assuming Plaintiffs are able to establish that federal constitutional rights are implicated here, the Court finds the record insufficient to establish that Defendants have deprived them of any such rights

_____

substantive due process rights are created only by the Constitution.") However, since it appears that Plaintiffs are not asserting a substantive due process claim, the Court need not further analyze this issue.

for the reasons discussed below.[4]

### b.    Deprivation of Federal Constitutional Rights

Plaintiffs argue that Defendants have engaged in "harassment," which has deprived them of their constitutional rights.  They rely in part on *San Jacinto Savings and Loan v. Kacal*, 928 F.2d 697, 699 (5th Cir. 1991), in which "summary judgment evidence" was sufficient to show that "the officers' harassment of [the plaintiff's] patrons was . . . the direct cause of the failure of her business" and thus, an infringement on the plaintiffs' liberty interests.  The court considered "the plaintiff's own affidavit that said in 1987, Officer Hale had told her '[y]ou will be lucky to stay open six months; Waxahachie has never let a business like this stay open.' " *Id.* at 699.  Plaintiffs also cite *P.A.B., Inc. v. Stack,* in which law enforcement engaged in harassment intended to shut down adult book stores.  *P.A.B., Inc. v. Stack*, 440 F. Supp. 937 (S.D. Fla. 1977).  The *P.A.B.* court explained, "What has been established . . .  without question, is a clear, continuous and pervasive pattern of harassment against each Plaintiff, evidenced by the facts and uncontradicted as to frequency and even as to intent or purpose, rising to constitutional levels and constituting extraordinary circumstances requiring jurisdiction of this Court to be invoked." *Id.* at 942-43. In *P.A.B.*, as in *Kacal*, there was record evidence that law enforcement specifically intended to shut down the plaintiffs' businesses.  *See id.* at 942 (where the sheriff, in a television interview, states, "I think both you and I agreed that we could take the peep machines away from your client and we're going to hit them in the pocketbook.  They would wither on the vine, and they'd go out of business, which was, I think, my legitimate

---

[4]  The findings of the Court in this Order are not controlling on later application for a permanent injunction or for the purposes of trial.  *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imps.,* 756 F.2d 1525, 1528 n.1 (11th Cir. 1985).

objective.")

In this action, Plaintiffs offer an affidavit from, Jessica Segars, a George's Place customer, who states, "In December 2010, one of the deputies was in the clinic and the subject of George's Place came up in conversation.  The deputy made the statement that 'Yeah, that place needs to be shut down and eventually it will be shut down.' " (Segar Aff., ¶ 13.)  This statement, made by some unknown deputy, is insufficient to carry the day for injunctive relief.  Whether his identity can be established and the facts more fully developed at trial remains to be seen.  At this time, however, there is no sufficient evidence showing that the Sheriff or any particular deputies specifically intended to "shut down" George's Place.  Additionally, Plaintiffs suggest Defendant Smith's alleged personal vendetta against Ms. Hocter over the "tow rotation incident" evinces his desire to run her business to the ground.  However, Defendants "vigorously dispute the factual basis and truth of all the Ms. Hocter's retaliation claims against [Sheriff Smith]."  (Doc. No. 13, p. 2.)

Defendants assert a much different set of circumstances surrounding the tow rotation incident.  In summary, Defendants allege that someone with whom Ms. Hocter was affiliated came to Defendant Smith and attempted to bribe him to "subvert the rotation policy so that a greater proportion of the towing business would be subverted to [a towing company which Ms. Hocter partially owned]."  (*Id.*)  Defendants also include with their Response an affidavit from Defendant Smith, in which he attests he "has never had a conversation with Plaintiff Hocter in which [he] threatened to retaliate or 'get even' with her some day for her actions in allegedly complaining about tow rotations in Bradford County."

11

(Doc. No. 13-1, Defendant Smith Affidavit, ¶¶ 6, 11.)[5]  Furthermore, even if Defendant Smith and Ms. Hocter had their differences, Defendants provide evidence that shows Defendant Smith never instructed his deputies to harass George's Place customers or otherwise harass Ms. Hocter.  (*See* Doc. No. 13-7, Brad Smith[6] Affidavit, ¶ 3.; Doc. No. 13-6, Eddie Boatwright[7] Affidavit, ¶ 4.)   In short, there is no undisputed evidence that Defendant Smith intended to shut down George's Place.

Next, the Court finds the record insufficient to show that the deputies' conduct in or around George's Place was so egregious as to constitute deprivation of Plaintiffs' constitutional rights.   In both *San Jacinto* and *P.A.B.* there was evidence that law enforcement actually approached patrons and told them to leave the plaintiffs' establishments.  *San Jacinto,* 928 F.2d at 699-700; *P.A.B*, 440 F. Supp. at 940.  In *San Jacinto*, officers told patrons to "leave or be arrested on several separate charges."  *San Jacinto,* 928 F.2d at 699-700.  In *P.A.B.*, uniformed and plain clothed officers stopped customers entering and exiting the plaintiffs' establishments, seeking identification, and suggesting that they refrain from entering or returning.  *P.A.B.*, 440 F. Supp. at 940.  An

---

[5]   Plaintiffs do not allege Defendants' law enforcement practices in or around George's Place has subjected them to prosecution or license revocation hearings. Thus, they do not assert a "Selective Enforcement" claim, which would require them demonstrate (1) they were singled out for prosecution while others similarly situated were not prosecuted and (2) Defendants' enforcement of the law against them was invidious or in bad faith.  *See Lanier v. City of Newton, Ala.*, 842 F.2d 253, 256 (11th Cir. 1988).

[6]   Brad Smith is the "Chief of Operations" for Bradford County Sheriff's Office.  He is "responsible for Patrol, Civil/Warrants, School Resource and Security."  (B. Smith Aff., ¶ 3.)

[7]   Eddie Boatwright is the Chief of Staff for the Bradford County Sheriff's Office.  He is responsible for "overall administration of the Sheriff's Office," and he commands "the Criminal Investigation Division, Dispatch and Process Serving Divisions, in addition to performing other functions."  (Boatwright Aff., ¶ 2.)

individual reported "with the aid of notes taken to establish dates, name and times, related approximately one hundred (100) separate incidents occurring from the period August 26, 1977 through September 27, 1977, in which police officers . . . likewise engaged in and performed similar acts of conduct that were testified to by [another witness]." *Id.* at 941.

Another court in this district found that plaintiffs' 42 U.S.C. § 1983 claims failed to survive summary judgment on facts very similar to those presented here.  In  *Wallace v. City of Tarpon Springs,* No. 8:05-CV-979-T-EAJ,  2007 WL 128836, at *7 (M.D. Fla. Jan. 12, 2007), the plaintiffs brought a Section 1983 action against the City of Tarpon Springs and the Police Chief, alleging that "through their agents, officers, and employees [they] formulated a plan to harass, intimidate, interfere with, and close [p]laintiffs' business because [p]laintiffs [were] African-American."  The court ultimately found that the police conduct did not constitute harassment, even though the record included evidence of "walk throughs" of the plaintiffs' bar, testimony that "TSPD officers" stopped customers "going to and from the bar approximately 50 times over six years," and witness statements that the "police park[ed] multiple cars outside [the bar] twice per week for five or six years, with as many as five cars at a time, 'whenever [they got] a nice crowd.' "  *Id.*[8]

 In this action, there is no evidence that Defendants approach George's Place's patrons as they leave the establishment and/or tell them "never to return."  Nor is there evidence that Defendants threaten to arrest customers if they do return.  Although some deputies allegedly park "within sight of the bar, while other patrol cars cruise near the vicinity of the bar" or "are regularly parked in residential driveways, in a nearby church

---

[8]  The complaint included additional allegations of harassing behavior that the court found unsubstantiated in the record.

parking lot, and in a convenience store parking lot all within sight of George's Place," the Court does not find such activity to be necessarily "harassing", in and of itself. (*See e.g.,* Longoria Aff., ¶¶ 6, 7.)  Eddie Boatwright explains in his supplemental affidavit, "In order to safely complete their reports without interfering with traffic into/out of the Kangaroo stores, deputies will usually park their cruisers near the dumpster which is located some distance off the highway."  (Doc. No. 20-1, Eddie Boatwright Supplemental Affidavit, ¶ 7.) He further states, "Particularly at night, deputies would be unable to distinguish between cars leaving from George's, and cars leaving from the trailer park." (*Id.* at ¶ 8.)  According to this evidence, Defendants had a legitimate purpose for sitting in parking lots near George's Place (i.e., to complete their reports), and arguably could not see which passing cars came from George's Place from their position in the Kangaroo parking lot. Additionally, SR-16 is a "highly traveled route" and "there are frequent reports/complaints of speeders" on that road.  (Boatwright Aff., ¶ 6.)  These "reports/complaints" alone could account for a greater law enforcement presence in the area.

Turning to the allegations that law enforcement "pulls over" George's Place customers for "no apparent reason," the Court finds the record insufficient to show "harassment" because it is not clear that the deputies in fact have no reason for instituting the traffic stops.  In at least two of the instances Plaintiffs mention, the deputy  had a legitimate purpose for conducting a traffic stop, even though he did not issue a traffic citation.  (*See e.g.,* Crews Aff., ¶¶ 10-11.)  In order to show that the deputies are irrationally exercising their discretionary enforcement duties, Plaintiffs will need to substantially buttress the record.  While Plaintiffs may ultimately prove that Defendants have no legitimate purpose for their presence along SR-16, driving through the George's Place

14

parking lot, or conducting traffic stops that impact George's Place customers, the current record does not show that the deputies engage in these activities primarily to harass Plaintiffs.[9]

### c.    Availability of Adequate State Procedures

Because the current record does not show Plaintiffs have been deprived of a constitutionally protected right, the Court does not address whether "the available state procedures were adequate to protect the alleged procedural deficiencies" at this time. *See Cotton,* 216 F.3d at 1331.

### 2.    Count II: Equal Protection Violation

Plaintiffs' equal protection claims are predicated on the theory that Defendants are treating George's Place differently than other "similarly situated" establishments. This type

---

[9] The Court does not address the other allegations of harassment, such as "walk-throughs," because there is even less evidence offered to suggest those are conducted for an illegitimate purpose. Further, the deputies have broad discretion to ensure compliance with Florida's Beverage Law. Florida Statute Section 562.41 (emphasis added) provides:

(1)    Any authorized employee of the division, any sheriff, any deputy sheriff, or any police officer may make searches of persons, places, and conveyances of any kind whatsoever in accordance with the laws of this state for the purpose of determining whether or not the provisions of the Beverage Law are being violated.

(2)    Any authorized employee of the division, any sheriff, any deputy sheriff, or any police officer may enter in the daytime any building or place where any beverages subject to tax under the Beverage Law or which would be subject to tax thereunder if such beverages were manufactured in or brought into this state in accordance with the regulatory provisions thereof, or any alcoholic beverages, are manufactured, produced, or kept, so far as may be necessary, for the purpose of examining said beverages. **When such premises are open at night, such officers may enter them while so open, in the performance of their official duties.**

of equal protection violation is commonly referred to as a "class-of-one claim."  *See Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562 (2000).  A class-of-one claim requires Plaintiffs to

demonstrate that they were treated differently than establishments who are "prima facie

identical in all relevant respects."  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir.

2007) (citations omitted).  Further, Plaintiffs have a "heavy" burden to show that "similarly

situated" establishments have been "treated more favorably."  *Hawkins v. Eslinger*, No.

6:07-cv-1261-Orl-19GJK, 2008 WL 2074409, at *1 (M.D. Fla. May 15, 2008)*; see Hicks v.*

*Jackson Cnty. Comm'n*, 374 F. Supp. 2d 1084, 1096 (N.D. Ala. 2005) ("The burden of

identifying similarly situated individuals is a heavy one."); *see also Nordlinger v. Hahn*, 505

U.S. 1, 10 (1992) ("The Equal Protection Clause does not forbid classifications. It simply

keeps governmental decision makers from treating differently persons who are in all

relevant respects alike.") If Plaintiffs establish that Defendants are treating them

"differently," they must next establish that there is no conceivably rational basis for the

difference in treatment.

Defendants maintain that Plaintiffs fail to sufficiently allege their equal protection

claim because they fail to identify a "similarly situated" establishment.   One of the

establishments Plaintiffs consider "prima facie identical," "The Slab Bait Tackle," is located

"outside of Starke," like George's Place, and is a "small establishment." (Boatwright Aff.,

¶ 10.)  Unlike George's Place, however, it "is not located on a high traffic road like SR-16.

Nor has it been the subject of complaints and incidents [(e.g., serving alcohol to minors)]

such as George's Place."  (*Id.*)  The other "comparators" Plaintiffs cite are either located

inside the Starke city limits and "primary law enforcement responsibility for such location

falls upon the Starke Police Department" or located "on or adjacent to US 301," which is

a primary location of DUI checkpoints and radar operations of both the Bradford County Sheriff and the Starke Police Department." (*Id.* at ¶¶ 11.)

Further, Defendants contend that there are "a far higher number of calls/police presence" at Timbuktu, another bar Plaintiffs consider "similarly situated," due to a higher number of traffic stops in the area surrounding that establishment. (Doc. No. 13, p. 4 (citing Boatwright Aff., ¶¶ 10-12).)    Additionally, Eddie Boatwright explains that "two bartenders/servers at George's Place" were arrested in December 2010 for "serving alcohol without verifying identification." (Boatwright Aff., ¶ 15.)  Although the Division of Alcohol Beverages and Tobacco ("ABT") inspected several other locations the same night, there were no similar citations issued.  (*See id.* at ¶ 18.)

Based on this record, Plaintiffs have failed to show a "substantial likelihood of success on the merits" on their equal protection claim.  There is insufficient evidence from which the Court could derive that the "comparators" Plaintiff cites are "prima facie identical." *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1266 (11th Cir. 2010).  Moreover, even if the other establishments are "prima facie identical" and even if Plaintiffs can establish that Defendants spend a disproportionate amount of time at or near George's Place, there is a "conceivably rational basis" for Defendants to treat establishments that have a history of violations differently than those that do not.[10]

### 3.    Policy or Pattern of Harassment

Finally, in order for Plaintiffs to succeed on their Section 1983 claim against the Sheriff in his official capacity, they will have to show that the violation of Plaintiffs' rights is

---

[10]    At this time, the Court has no evidence to determine whether any of the "comparators" had similar violations.

attributable to a municipal policy or custom.  "A custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  Although a custom need not receive formal approval from the municipality, "random acts or isolated incidents are insufficient to establish a custom or policy."  *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (citations omitted).  It is generally necessary for a plaintiff to show a "persistent and widespread practice" of constitutional violations.  Additionally, "actual or constructive knowledge of such customs must be attributed to the governing body of the municipality."  *Id.*

A municipality may also be liable when "a series of decisions by a subordinate official manifests a custom or usage of which the supervisor must have been aware." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (citation omitted).  A "policy" is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell*, 117 F.3d at 489.  A single decision by a municipal official may expose a municipality to liability, provided that the official possesses final authority to establish policy with respect to the action ordered.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-82 (1986).

Plaintiffs claim that Defendant Smith "was at all times material hereto responsible for the supervision, training discipline, control and conduct of police officers and members of the Bradford County Sheriff's Office and made policies for the Bradford County Sheriff's Office with respect to searches, seizures, arrests, use of force, and investigations."  (Doc. No. 1, ¶ 6.) They allege that "[Defendant] Smith and his agents and employees . . . instituted and followed practices, customs, and policies that directly resulted in the

18

intentional, continuous, and pervasive harassment of the Plaintiffs for the purpose of driving Plaintiffs out of business." (*Id.* at ¶ 31.)  They also maintain that Defendants had a policy or custom designed to treat Plaintiffs differently from similarly situated establishments without any rational basis, and that such policy or custom "was the moving force causing Plaintiffs' injuries and is actionable under 42 U.S.C. § 1983." (*Id.*)  Alternatively, they allege that the officers acting on the scene were the final policy makers for Sheriff Smith because "their decisions were not immediately or effectively reviewable." *(Id.* at ¶ 31.)  While these conclusory statements arguably might survive a motion to dismiss, they are insufficient to show a likelihood for success on this claim in the context of an application for preliminary injunction.

Defendants offer affidavits from Eddie Boatwright and Brad Smith, both of whom would be "personally aware of any orders or guidance issued by [Defendant] Smith to cause increased surveillance, investigations or law enforcement presence at George's Place." (B. Smith Aff., ¶ 3.; Boatwright Aff., ¶ 1.)  They both affirm that "[n]o such orders have been issued by [Defendant] Smith at any time since he took office." (*Id.*)  Additionally, Defendant Smith and Brad Smith state that "[t]he records of the Bradford County Sheriff do not show any disproportionate number of calls/law enforcement presence at George's Place, given the number of reported incidents at George's Place." (Defendant Smith Aff., ¶ 17; B. Smith Aff., ¶ 4.)  Further, as mentioned above, in his affidavit, Eddie Boatwright states, "The records of the Bradford County Sheriff actually show a far higher number of calls/police presence at Timbuktu due to the higher number of traffic stops at such location." (Boatwright Aff., ¶ 12.)  This evidence, if credited, refutes Plaintiffs' unsupported contention that Defendant Smith and his deputies created a policy, custom, or practice to

harass George's Place or Ms. Hocter.

Finally, even if the current record indicated a "policy, practice, or custom" of harassment towards George's Place exists, the Court would still have to determine whether "actual or constructive knowledge" of such policy, practice, or custom could "be attributed to the governing body of the municipality," or whether Defendant Smith or any of the deputies possess "final policymaking authority." *Congleton v. Gadsen Cnty., Fla.,* No. 4:11–CV–00097, 2011 WL 2174350, at *3 (N.D. Fla. June 1, 2011) (citations omitted). The facts as they stand are insufficient to enable the Court to make this determination. For this reason, in addition to those set forth above, Plaintiffs fail to meet the burden of persuasion on this first prong of the preliminary injunction analysis.

### B.    Public Interest

The Court recognizes that courts ordinarily place less significance on the "public interest" factor than the "irreparable harm" factor when determining whether a preliminary injunction should issue. However, given the circumstances presented in this case, it is particularly concerned that granting Plaintiffs' requested relief would potentially do a "disservice" to the public. Plaintiffs carry the burden of persuasion on this factor, as they do the other three, and it is up to them to meet the burden of persuasion to show that an injunction would be aligned with interests of the public. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

At the December 8, 2011 hearing, the Court asked Plaintiffs to provide it with authority that exemplifies how it could draft a manageable injunction – one that would not chill law enforcement in Bradford County nor require the Court to meddle in law enforcement's day to day activities. Plaintiffs did not include any such authority in their

Supplemental Response.  (Doc. No. 19.)  However, at the hearing, they suggested that the

Court use language similar to that which the court used in *P.A.B., Inc. v. Stack*:

> ORDERED that the Motion of Plaintiffs in both causes of action for Preliminary Injunctive Relief be and the same is hereby GRANTED in part and relating to all Defendants in both actions, as follows:
>
> 1.  Future use of police and police patrols in and about the immediate vicinity of Plaintiffs' establishments shall be limited to reasonable requirements for law enforcement and maintaining law and order in the general areas in which same are located but in a manner not inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.
>
> 2.  The posting of police cruisers and/or police personnel in or about the immediate area of the Plaintiffs' establishments with or without their lights flashing and with or without police officers in said vehicles shall be limited to reasonable requirements for law enforcement and maintaining law and order in the general areas in which same are located but in a manner not inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.
>
> 3.  Identification checks of customers and/or employees of Plaintiffs and/or people in or about the immediate vicinity of Plaintiffs' establishments shall be limited to reasonable requirements for law enforcement and maintaining law and order in the general areas in which same are located but in a manner not inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.
>
> 4.  Entry or exit by any customer or patron of Plaintiffs' establishments shall not be prohibited or interfered with except for violation of law and customers shall not be told not to enter Plaintiffs' establishments or that they would likely be arrested or in any other way harassed in any manner inconsistent herewith and specifically not calculated to harass Plaintiffs' businesses.

*P.A.B.,* 400  F. Supp. at 947.

Based on the record as it stands, the Court finds that law enforcement's conduct

has not been established to be so egregious as to warrant an order, like the one in *P.A.B.*,

effectively instructing police officers to "do their job."  It goes without saying that law enforcement practices shall be limited to "reasonable requirements," and it would be imprudent– and arguably beyond this Court's authority–  to hold the officers of Bradford County to a more exacting standard.[11]  *See Stefanelli v. Minard*, 342 U.S. 117, 120 (1951) (explaining that in exercising its equitable powers, this Court must recognize "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.")

The public is best served by law enforcement officers who are not hindered by a necessarily imprecise court order attempting to limit their discretionary duties or enjoin them from acting "unreasonably."  Plaintiffs will have ample opportunity at the summary judgment stage, or at trial, to prove that Defendants' conduct does not constitute legitimate law enforcement activity.  (*See* Doc. No. 15, p. 7.)  In the interim, the Court need not risk jeopardizing the safety of Bradford County's citizens by imposing an injunction.

## C.    Irreparable Injury and Balance of Harms

Because Plaintiffs have failed to meet their burden on two of the four elements required to obtain the "extraordinary and drastic remedy" they seek, the Court does not consider the remaining factors.  This Court may not issue a preliminary injunction "unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009) (citing *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535,

---

[11]   The Supreme Court has often explained, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving."  *Kentucky v. King*, 131 S.Ct. 1849, 1860 (2011)(quoting *Graham v.Conner*, 490 U.S. 386, 396 (1989))(in the context of Fourth Amendment search and seizures).

1537 (11th Cir. 1989) (quotation marks omitted)). "Failure to show any of the four factors is fatal," and Plaintiffs have failed to meet their burden on two of the four. *See id.* (citing *Schiavo*, 403 F.3d at 1226 n.2; *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)).   Accordingly, the Plaintiffs' motion is due to be denied.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1) Plaintiffs' Motion for Preliminary Injunction and Memorandum of Law (Doc. No. 2), filed on November 7, 2011 is **DENIED**.

2) Defendants are **DIRECTED**, should they so choose, to re-submit any motion to dismiss and/or motion for summary judgment seeking affirmative relief as a separate pleading in accordance with Federal Rule of Civil Procedure 7(b) to allow for responsive briefing in accordance with Local Rule 3.01(b).

3) The Clerk is **DIRECTED** to strike the portion of the docket entry accompanying Sheriff Smith's Supplemental Response (Doc. No. 20) that designates it as a "Motion to Dismiss; or, Alternatively, a Motion for Summary Judgment."

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on February 1, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record